#### FOR THE

## COUNTY OF BRISTOL, OCTOBER TERM 1869, AT TAUNTON.

### [CONTINUED FROM VOL. CII.]

───────

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr., ⎫
Hon. JOHN WELLS,            ⎪
Hon. JAMES D. COLT,        ⎬ Justices.
Hon. MARCUS MORTON,        ⎭

───────────

## Charles Presbrey vs. Old Colony & Newport Railway Company.

A road across one's own land is not a "private way" within the meaning of the Gen. Sts. c. 63, § 28, requiring application to be made within a year for damages for the obstruction of a private way by a railroad corporation.

In assessing, under the Gen. Sts. c. 63, § 21, the damages occasioned to land by the location of a railroad across it, they are to be assessed on the basis that the landowner has no right to cross the railroad; unless the railroad corporation has secured him such a right under §§ 40, 64–66.

In assessing, under the Gen. Sts. c. 63, § 21, the damages occasioned to a vacant tract of land by the location of a railroad which cuts off a corner of it, the depreciation of the land in value by reason of the proximity of the railroad, such as by "frightening horses and the like causes," does not constitute, of itself, a ground for recovery.

At a hearing by a sheriff's jury to assess the damages caused to a vacant tract of land by the location of a railroad across it, evidence is not admissible to show the sum paid by the railroad corporation to the owners of an adjoining estate; when it appears that it was paid as a gross sum, not only for land taken, but also for damages to the entire

estate, on which was a dwelling-house near the railroad and a well within the location of the railroad, and through which the railroad was carried on a high embankment.

PETITION to the county commissioners for the assessment by a jury of damages occasioned by taking land of the petitioner, in Taunton, for the construction of the respondents' railroad. Hearing by the jury on July 12, 1869, before the sheriff, the material parts of whose certificate were substantially as follows :

The petitioner was the owner of a tract of land in Taunton containing several acres, bounded westerly by Weir Street and easterly by Ingell Street, both public highways, and, some time before March 15, 1865, the date of the location of the respondents' railroad, opened and built a way or road, thirty-two feet wide, called Presbrey Street, running from Weir Street to Ingell Street, for the purpose of selling house lots thereon, and sold two lots near Ingell Street. This way or road was never made a public highway. The location of the respondents' railroad cut off a corner of the petitioner's land and the end of his way or road. The petitioner's land had no buildings upon it.

" For the purpose of showing the value of his land, the petitioner offered to show what sum the respondents paid to the ' Willis estate,' immediately adjoining. It appeared that said sum was paid, as a gross sum, not only for the land taken, but also for damages to the entire estate, on which was a dwelling near the railroad, and also a well, covered by the line of the location of the railroad, but thus far suffered to remain open for use, and that said estate was cut through with a high embankment. The respondents objected to the admission of the evidence, because the cases were not similar, and because the damages so paid were paid as one gross sum, and not merely for the land ; but the sheriff admitted the same, and ruled that it was for the consideration of the jury."

The respondents' railroad was built and opened in the summer of 1866 ; and the petitioner never made any application to the county commissioners to assess his damages, but the respondents made the application to them on November 13, 1867.

" The respondents asked the sheriff to rule that, no application for damages sustained by reason of the obstruction of said

way to the petitioner's back land having been made within one year from the time when said way was so obstructed, the petitioner was now barred of recovering such damages, by the Gen. Sts. c. 63, § 28; but the sheriff ruled otherwise, and that the statute did not apply to this case.

" The respondents' railroad had a fence along the track, but no buildings, where Presbrey Street was crossed; and the respondents asked the sheriff to rule that the petitioner could still cross to and from Weir Street over the railroad to his back land, and if so, that the cost of raising his way so as to reach Weir Street over the railroad, with the reduced value of his back land, if any, by reason of having to cross the railroad to reach Weir Street, would be the measure of damages by reason of such obstruction; and that the damages should be assessed upon the basis of such a right to cross the railroad; but the sheriff ruled that the petitioner, having an opportunity to reach the highway without crossing the railroad, had no right so to cross, and that the jury, in assessing the damages, should consider that the petitioner had no such right.

" The respondents asked the sheriff to rule that, if the petitioner had not a legal right still to cross the railroad, he had a legal right to build a new road by the side of the railroad, and in such case the sum it would cost to build the new road, and the value of the land required for the new road, and any depreciation in the value of such back land, caused by such bend in the road, would be the measure of damages by reason of such obstruction; and that in neither case could damages be assessed for depreciation in the value of the back land by reason of the proximity of the railroad through fear of frightening horses and such like causes; but if the sheriff should rule otherwise, the respondents asked that such damages might be assessed separately. The respondents also asked the sheriff to rule that depreciation in the value of the petitioner's remaining land on Weir Street by reason of the proximity of the railroad, such as frightening horses and the like, could not be included as an element of damages in this proceeding; but if the sheriff ruled otherwise, the respondents asked that any such damages might be

assessed separately. The petitioner assented to the assessment of such damages separately, but contended that he could recover the same.

"The sheriff ruled and instructed the jury that they should assess damages as follows: 1. For the value of the land actually taken by the location of the road. 2. What it would cost to build a new way from Weir Street, alongside of the railroad, including the value of the land required to build said way, which was thirty-two feet wide; and the depreciation in the land by reason of the bend in the road. 3. For the depreciation of the remaining land on Weir Street and Presbrey Street, by reason of the proximity of the railroad, such as for frightening horses, and the like causes. 4. Interest on said amounts from March 15, 1865, the date of the location, reckoned at six per cent."

The jury assessed damages separately, 1. "for the value of the land actually taken;" 2. "for the cost of building a new road thirty-two feet wide over the petitioner's remaining land, from Weir Street to Presbrey Street;" 3. "for the depreciation of the remaining land of the petitioner on Weir Street and Presbrey Street, by reason of the proximity of the railroad, such as the increased difficulty of travelling the new road with angle in it, and such as the danger of frightening horses and the like;" and assessed interest on each of the three amounts as instructed.

The respondents having alleged exceptions, the superior court ruled that the verdict should be wholly set aside, and to this ruling the petitioner alleged exceptions.

*E. Ames,* for the petitioner.

*E. H. Bennett,* for the respondents.

WELLS, J. One question raised at the trial, though not argued here, was, that no damages could be given on account of the obstruction to the road leading from the highway across the land of the petitioner, because no application had been made therefor within one year. Gen. Sts. *c.* 63, § 28. But a road across one's own land is not a "private way" within the meaning of that statute. The ruling of the sheriff upon this point was correct.

The ruling was correct, also, as to the right of the petitioner

to cross the railroad; or to continue the use of the street laid out by him so as to cross " to and from Weir Street over said railroad to his back land." No such right exists, unless secured to the owner of the land under the provisions of Gen. Sts. *c.* 63, §§ 40, 64–66. The corporation may obstruct and prevent such crossing whenever it is deemed necessary or expedient for the safety of passengers or others, or the protection or convenience of the corporation. Its officers are the sole judges of the exigency which requires or makes it expedient to close up its line of location against such crossings by mere license. *Brainard* v. *Clapp*, 10 Cush. 6, 12. *Curtis* v. *Eastern Railroad Co.* 14 Allen, 55. *Boston Gas Light Co.* v. *Old Colony & Newport Railway Co.* 14 Allen, 444. Damages are properly to be assessed in reference to this nearly absolute and exclusive right which is taken. *Ham* v. *Salem*, 100 Mass. 350. If the corporation would lessen the damages on the ground of any right of crossing reserved to or remaining in the landowner, it must secure those rights to him in the mode pointed out by the several sections of the statutes above referred to.

The owner of the land is entitled to " all damages occasioned by laying out and making and maintaining its road," as well as by taking his land. Gen. Sts. *c.* 63, § 21. This includes all injury to the remaining land, by cutting off access to or egress from different parts of it, whether by roads actually in use or otherwise; or rendering it inconvenient by breaking it up into irregular pieces; or in any manner lessening its suitableness for occupation as a whole, or for division into lots. If, by constructing a new way by the side of the railroad, the remaining land would be equally well accommodated as by the former one, and equally suited for occupation as a whole, or for division into lots, then the cost of constructing such new way, and the value of the land required therefor beyond that previously used as a way and taken and paid for as land by the railroad corporation would be a proper measure of damages, so far as the mere obstruction of the way is concerned.

The corporation requested that the cost of making a new way, including the value of the land required therefor, "and the de-

preciation in the land by reason of the bend in the road," should be assessed separately, as the damages on account of the loss of the former way. The petitioner assented to that mode of assessing the damages; and the only question here seems to be whether he is entitled to recover those damages in addition to the value of the land taken for the railroad. It follows, from the considerations already stated, that he is so entitled.

The jury were also instructed to assess separately the damages claimed " for the depreciation of the remaining land on Weir Street and Presbrey Street, by reason of the proximity of the railroad, such as for frightening horses, and the like causes." The damages assessed upon this ground we think are not properly recoverable. Such depreciation is not occasioned directly by any effect upon the land, of which the construction or the maintenance of the railroad is the cause. It belongs to that class of results which necessarily arise from the exercise of the franchise granted to such corporations in consideration of the general advantage which the whole community are expected to derive from it. The annoyances to the landowner are the same in kind with those which are suffered by the whole community The fact that land, lying upon or near the location of the railroad, is thereby rendered less desirable for the erection of dwellings or other buildings, and of less market value in consequence, does not furnish an independent ground for the recovery of damages therefor. *Eames* v. *New England Worsted Co.* 11 Met. 570. *Fuller* v. *Chicopee Manufacturing Co.* 16 Gray, 46. The effect upon land of the annoyance or inconvenience arising from the laying of the track, and the frequent passing of trains over a street by which it is approached, has been frequently held to afford no ground for damages. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad Co.* 10 Cush. 385. *Boston & Worcester Railroad Co.* v. *Old Colony Railroad Co.* 12 Cush. 606. *Caledonian Railway Co.* v. *Ogilvy,* 2 Macq. 229; 29 Eng. Law & Eq. 22.

The principle of these decisions may not apply when the construction or the use of the railroad is such as to cause an actual obstruction to the occupation of land, or interruption of

the business to which it is appropriated. *Western Pennsylvania Railroad Co.* v. *Hill,* 56 Penn. State, 460. *Boston & Worcester Railroad Co.* v. *Old Colony & Fall River Railroad Co.* 3 Allen, 142. But when the injury complained of consists only in annoyances, as by the " frightening of horses and such like causes," whether by crossing streets or passing near to private avenues or land, it is not such a direct and appreciable injury to the land or the landowner as to constitute, of itself, a ground for the recovery of damages; although it may make the land less desirable for some purposes, less saleable, and thus depreciate its market value.

When, however, part of a tract or lot of land is taken, the damages therefor may be more or less affected by the nature of the uses for which it is taken, and the kind and character of structures liable to be placed upon it. The basis of the estimate is not strictly the value of the land taken, with added damages for such direct injuries as may be occasioned to the remaining land. It is compensation for all damages to the whole tract, occasioned by taking a part of it for the uses and in the manner in which it is taken by the location. The inconveniences and annoyances inseparable from such uses must inevitably, and may properly, affect the estimate of damages occasioned by such appropriation of a part of the land; but they do so incidentally, and not as in themselves a ground of damage. The degree of such incidental effect will depend much upon the situation of the land, the uses to which it is appropriated, and the manner in which it is cut by the line of location. If the whole is vacant land, and the part taken is a narrow strip from one side, any claim of damages, beyond the value of the land taken, would ordinarily stand upon the same footing with a like claim where the location is outside but adjoining the boundary line of the claimant's land. Such claim, as has already been said, can be sustained only for injuries to the land itself, and for disturbance of its means of access or of convenient occupation.

By direction of the sheriff, the jury have returned separately the interest on each of the sums assessed by them as damages upon the several grounds of damage submitted to them. No

objection is made to the severance in the verdict, nor to the al-
lowance of interest upon the value of the land taken.    The
respondent objects to the allowance of interest upon the sum
returned as the cost of a new road, for the reason that the peti-
tioner has not yet incurred that expense, and has not as yet suf-
fered any loss by being deprived of the use of the old one.   The
difficulty upon this point arises from the fact that the parties
have adopted a particular mode of fixing compensation for a
part of the injury, and it is not certain that the jury would
otherwise have arrived at the assessment in that mode.    The
respondent denies that the proposal under which the cost of the
new road was estimated involved the addition of interest.    As
it was computed by direction of the sheriff, it does not appear
that the jury intended to return the two sums as their estimate
of the damages on account of the loss of the road.    See *Con-
necticut River Railroad Co.* v. *Clapp*, 1 Cush. 559.    Properly,
the damages to be estimated for this cause would be the amount
of injury or depreciation in value of the whole lot, occasioned
by the loss of the means of access which had been cut off by
the railroad.    The assessment is to be made with reference to
the time when the land was taken.    But the damages awarded
should be such that the verdict will be full compensation.    This
may require an increase of the valuation, thus made, by an
amount equal to the interest thereon.    Ordinarily it is supposed
to be included in the general verdict.    Perhaps, against the re-
spondent requesting the assessment to be made in this form,
the amount returned should be presumed to be the proper esti-
mate of the damage, assessed as of the date when the land was
taken, and with a view to the addition of interest thereon.    But
it is not necessary to decide this point at present, because a
new trial of the whole case must be had upon another ground.

   The facts stated in the report, in regard to the " Willis estate,'
show that the sum paid by the respondent for the land taken
and damages occasioned to that estate, was improperly admit-
ted in evidence.    Upon the question of the value of land which
is the subject of controversy, actual sales of other land in the
vicinity, similarly situated, may be shown, and the price paid

upon such sales. The fact to be established is the market value and the prices paid upon actual sales are indications of that value. But the value of land depends so much, not or f upon its intrinsic quality, but upon situation, shape, relative position and other incidental circumstances, that evidence of this character can rarely furnish an accurate measure of value, an l ought always to be admitted with great caution. The question of its admissibility must be passed upon, in the first instance, by the officer presiding at the trial; and much latitude of discretion is allowed to his determination. *Shattuck* v. *Stoneham Branch Railroad Co.* 6 Allen, 115. But where it is made to appear that the evidence was admitted improperly, it is open to exception.

As a sale of land, the transaction in regard to the " Willis estate " did not furnish such a comparison as would enable a jury properly to arrive at the value of the vacant land of the petitioner. That payment was for a strip of land across a house lot, near the dwelling-house, and including a well; and the location involved a high embankment upon the strip so taken. The position of such a strip of land, and its relations to the dwelling-house, would inevitably and reasonably affect the price to be placed upon it, so far as to make it an unsuitable measure for the value of other lands not so connected.

But further than that; the price paid for lands purchased for the location of a railroad, designated by lines run according to the exigencies of that location, and without reference to the convenience of the landowner, is generally affected by a consideration of the disadvantage to the whole tract resulting from the manner in which the location is made. It includes all incidental injuries to the remaining land. It is in effect a settlement of all damages which would otherwise be recoverable by the proceedings provided for that purpose. Where the transaction is free from such considerations, so that it may fairly be regarded like an ordinary sale, between seller and purchaser, the evidence would be competent in the assessment of damages for other lands, to show the value of the land; and none the less so because the purchaser was a railroad corporation and the respondent in the proceedings. *Wyman* v. *Lexington & West Cam*

*bridge Railroad Co.* 13 Met. 316. In that case, a witness was asked and allowed to state what was given by the respondents for land next adjoining the land of the petitioner. The situation and circumstances are not stated, and no ground is shown against the propriety of the ruling of the sheriff admitting the testimony, except the fact that it was a purchase by the railroad corporation for the purposes of its location. The opinion of the court apparently assumes that it was merely a purchase of land with only the ordinary incidents of a purchase. The case did not turn upon that point; and the decision cannot be regarded as settling anything more upon this question than that such evidence is not necessarily incompetent, and that exceptions will not be sustained on account of a ruling admitting it, unless they show some ground upon which the court can see that the ruling was erroneous upon the facts of the case. *Boston & Worcester Railroad Co.* v. *Old Colony & Fall River Railroad Co.* 3 Allen, 142.

In this case, the report shows that the sum paid by the respondent to the " Willis estate " was paid " as a gross sum, not only for the land taken, but also for damages to the entire estate." It also shows that the circumstances and the situation of the estate were such that the damages must have formed an important element in estimating the amount to be paid therefor. This, in our opinion, rendered it incompetent as evidence of the value of the adjoining vacant land.

For these reasons, the verdict was properly set aside wholly in the superior court.                        *Exceptions overruled.*