CHARLES J. PIERCE *vs.* WORCESTER & NASHUA RAILROAD COMPANY.

If a jury, in estimating the damages of a landowner for the taking of a strip of his land for the location of a railroad, include compensation for the exposure of his buildings to fire in consequence of the neighborhood of the railroad track, such compensation will be presumed to be estimated with due allowance for the indemnity provided by the Gen. Sts. *c.* 63, § 101, in event of their injury by fire communicated by locomotive engines of the railroad corporation; and even if there is evidence to overcome this presumption, it is inadmissible against the plaintiff in an action brought on the statute, for such indemnity, against the corporation, by a subsequent grantee of the buildings, who was not a party to the proceedings before the jury.

In an action on the Gen. Sts. *c.* 63, § 101, for the injury of the plaintiff's buildings by fire communicated by the locomotive engine of a railroad corporation, the introduction by the plaintiff of evidence of the direction of the wind at a place five miles distant from the fire does not afford the defendants good ground of exception, unless it appears to have misled the jury as to its direction at the time and place of the fire.

TORT on the Gen. Sts. *c.* 63, § 101, for the destruction of the plaintiff's farm-house and outbuildings by fire communicated by the defendants' locomotive engine.

At the trial in the superior court, before *Devens,* J., it appeared that the plaintiff's farm was owned on February 27, 1857, by John D. Lovell, who that day conveyed it to James D. Moore, who conveyed it to the plaintiff October 31, 1860; both deeds containing covenants of full warranty and freedom from incumbrances. And the plaintiff introduced evidence tending to show that soon after two o'clock on the afternoon of December 26, 1868, fire was discovered upon the roof of the farm-house, a few minutes after a locomotive engine of the defendants had passed over their railroad track, which ran only sixty feet distant in a northwesterly direction from the farm-house; that the wind was blowing at the time from the northwest so that the smoke from the engine was driven towards the house; and that the fire spread, and consumed the house and outbuildings.

One of the plaintiff's witnesses was Joseph Draper, who was the assistant superintendent of the state lunatic asylum at Worcester, which was situated five miles south of the plaintiff's buildings. Draper testified that he kept at the asylum a record of

meteorological observations, made three times daily; and " was allowed, against the defendants' objection, to testify, from his minutes, as to the state of the weather at the asylum on said 26th of December, in the morning, at two o'clock in the afternoon, and in the evening, and testified that at two o'clock the wind was from the northwest; and was allowed, against the defendant's objection, to testify to the state of the weather for the two or three days preceding, and stated that it was stormy on the 23d of December, and that there was no storm between that time and the time of the burning of the plaintiff's buildings."

The defendants offered to prove that, when their railroad was constructed, Lovell, who then owned the farm, petitioned the county commissioners to estimate his damages "occasioned by laying out, making and maintaining the railroad, and taking land and materials therefor;" that the commissioners estimated his damages, including, among other elements of damage, as appeared by their records, "risk of buildings against fire, and all inconvenience to said farm;" that Lovell was dissatisfied with their estimate, and had a jury to assess damages, according to the statute; that at the hearing before the jury he offered evidence upon the subject of the risk of his buildings from fire from the locomotive engines, and claimed increased damages on account of that danger; that the jury took the subject into consideration, and awarded damages to him, among other things, for danger to his buildings from fire in consequence of running the railroad track so near to them; that the defendants paid the award, and took a receipt from him in full for all damages so assessed; that the full amount of damages estimated by the county commissioners was $584.19, and the amount assessed by the jury was $953; and that the buildings burned were the same which stood upon the land at the time of this assessment of damages, and had never been changed in any respect. The defendants offered to show also, that Lovell, at the time of the assessment, understood that it included all risk from fire which might be communicated by the defendants' locomotives, and that the track ran so near to the buildings as to cause imminent and appreciable danger from fire. But the judge excluded all the evidence relating to the pro-

ceedings before the county commissioners and the jury, and the records of said proceedings, and ruled that any or all of the facts offered to be proved would constitute no defence to the action.

The verdict was for the plaintiff, and the defendants alleged exceptions.

*H. B. Staples & F. P. Goulding*, for the defendants.

*P. E. Aldrich*, for the plaintiff.

COLT, J. The defendants deny the plaintiff's right to recover under the statutes, for the loss of his buildings by fire communicated from a locomotive; on the ground that, when the railroad was located and built, Lovell, who then owned the plaintiff's premises, at the hearing upon his petition for the assessment of damages, claimed compensation, not only for so much of the land as was taken, but also for the risk and danger to these very buildings by fire, produced evidence in support of his claim, and was in fact awarded additional damages on that account.

The jury could not lawfully take into consideration any damages not directly occasioned by laying out, making and maintaining the railroad, and would seem to have no right, as an element of damage, to determine how much the owner should receive in discharge of the defendants' liability for the future destruction of his buildings by fire from the defendants' engine. To what extent it is proper for the jury to contemplate such contingencies, it is not here necessary to discuss. *Presbrey* v. *Old Colony & Newport Railway Co.* 103 Mass. 1. *Walker* v. *Same*, Ib. 10. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad Co.* 10 Cush. 385. *Boston & Worcester Railroad Co.* v. *Old Colony Railroad Co.* 12 Cush. 605. *Dodge* v. *County Commissioners*, 3 Met. 380.

It is a sufficient answer to the defendants' offer of evidence, that damages on account of exposure to fire, even if proper to be allowed, must be presumed to have been estimated by the jury in reference to, and making due allowance for, the indemnity provided by the statute, whenever the loss is shown to have been caused by passing engines. It is plain that this indemnity is not so perfect and complete as to preclude, in the estimate of damages, a consideration of the direct effect of a constant liability to

destruction by fire from this new source, upon the present value of a dwelling, erected upon the remaining portion of the estate, as a safe and comfortable residence, or for purposes of sale. The present value of the property must be to some extent depreciated, although there is a chance that the buildings may never be destroyed by fire, and although, if they are, it is certain that the owner, whoever he may then be, will be indemnified under the statute for the actual loss he sustains. The injury to be measured in the assessment of damages occasioned by the location of the railroad, in this respect at least, is broader than the indemnity of the statute. In fact, the latter rests on entirely different principles. No owner of buildings, however near the track, or however great the danger, can recover damages on account of the location and construction of the road, unless some part of his estate was taken or directly affected; while for injury by fire, under the statute, whenever it happens, the road is responsible, although the building may be far removed from the track and erected since the road was built. *Perley* v. *Eastern Railroad Co.* 98 Mass. 414.

But further, if the jury included in their verdict a sum which, upon some doubtful computation of chances, would be equivalent, in their opinion, to an insurance against this risk, and it was paid to an owner of this estate, we do not see, under the circumstances offered to be shown, how it would defeat the right of such owner himself to recover for a loss under the statute. It would not amount to a release or waiver of his claim, and there was no promise or agreement on his part, founded on any consideration, not to claim damage in case of actual loss. *Seymour* v. *Carter*, 2 Met. 520. It is at most the mistake or fault of the jury. And to give effect to this defence would be like allowing the defendants to show, in an action for a personal injury to the plaintiff himself, or to his cattle, upon the track, that the jury considered such exposure in their estimate of damages, when the land was taken. It is not easy to see why the same defence would not be equally well founded, against one who had conveyed the right of way to the corporation upon a price agreed, and which must be presumed to have been fixed by the owner, to cover all inconven-

ience and risk. *Lyman* v. *Boston & Worcester Railroad Co.* 4 Cush. 288.

Finally, the evidence offered, as against the present plaintiff, was clearly incompetent. No damages were assessed in his favor. He was not then the owner. The additional risk and expense of protecting these buildings against fire was incident to the estate when he became owner. And in the language of Shaw, C. J., in *Hart* v. *Western Railroad Co.* 13 Met. 99, 105, "this indemnity, provided by law against a special risk, may be considered as a quality annexed to the estate itself, and passing with it to any and all persons who may stand in the relation of owners."

The meteorological observations at the asylum, which were admitted in evidence, do not appear to have been so remote as to mislead the jury as to the general direction of the wind.

*Exceptions overruled.*